# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| SAMUEL M. NEWMAN, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 2:10cv00031 |
| ) | **REPORT AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
|  Commissioner of Social Security, ) | By:   PAMELA MEADE SARGENT |
|     Defendant. ) | UNITED STATES MAGISTRATE JUDGE |

*I. Background and Standard of Review*

The plaintiff, Samuel M. Newman, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2003 & Supp. 2010). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."

*Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Newman protectively filed his application for DIB on August 8, 2007, alleging disability as of August 15, 2002,[1] based on bipolar disorder, depression, restless leg syndrome, back pain, sleep apnea and headaches. (Record, ("R."), at 116-17, 132, 136, 162.) The claim was denied initially and upon reconsideration. (R. at 76-78, 82, 84-86, 88-89.) Newman then requested a hearing before an administrative law judge, ("ALJ"). (R. at 90.) The ALJ held a hearing on July 15, 2009, at which Newman was represented by counsel. (R. at 21-72.)

By decision dated September 4, 2009, the ALJ denied Newman's claim. (R. at 7-20.) The ALJ found that Newman met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2003.[2] (R. at 9.) The ALJ also found that Newman had not engaged in substantial gainful activity since August 15, 2002. (R. at 10.) The ALJ found that the medical evidence established that Newman suffered from severe impairments, namely depression, bipolar disorder, anxiety, posttraumatic stress disorder, alcohol abuse and obesity, but she found that Newman did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 10.) The ALJ also found that Newman had the residual functional capacity to perform simple,

---

[1] Newman indicated on his DIB application that his date of disability was August 15, 2001. (R. at 116.) He amended his onset date to August 15, 2002, at his hearing. (R. at 62-63.)

[2] The relevant time period under review in this matter is from August 15, 2002, Newman's alleged disability onset date, to December 31, 2003, Newman's date last insured.

noncomplex light work[3] prior to his date last insured. (R. at 12-13.) The ALJ also found that Newman would be prohibited from more than occasional or intermittent contact with the general public. (R. at 13.) Thus, the ALJ found that, through the date last insured, Newman was unable to perform his past relevant work as a high school teacher and an administrative assistant. (R. at 18.) Based on Newman's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of other jobs existed in the national economy that Newman could perform, including jobs as a laundry folder, a garment folder and an assembler. (R. at 19-20.) Thus, the ALJ found that Newman was not under a disability as defined under the Act and was not eligible for benefits. (R. at 20.) *See* 20 C.F.R. § 404.1520(g) (2010).

After the ALJ issued her decision, Newman pursued his administrative appeals, (R. at 73), but the Appeals Council denied his request for review. (R. at 1-3.) Newman then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2010). This case is before the court on Newman's motion for summary judgment filed October 13, 2010, and on the Commissioner's motion for summary judgment filed December 15, 2010.

## II. Facts

Newman was born in 1956, (R. at 116), which classified him as a "younger person" under 20 C.F.R. § 404.1563(c), as of the date last insured. Newman was a

---

[3] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, he also can do sedentary work. *See* 20 C.F.R. § 404.1567(b) (2010).

high school teacher and athletic coach from 1979 until 1997. (R. at 29-30, 141.) In 1997, he was arrested and charged with having sex with a 14-year-old female student. (R. at 30-31, 505-08.) Newman lost his teaching job, and, following a plea bargain, was incarcerated until 1999. (R. at 30-32, 522.) Following his release, he was placed on supervised probation for three years, and his name was added to the registry of sexual offenders. (R. at 32-33.) Newman completed a paralegal degree program at a community college in 2001. (R. at 39.) On May 24, 2001, Newman began a clerical/administrative job at the law firm of Chafin & Chafin. (R. at 39-40, 557.) Newman stated that he loved his job and never missed a day of work. (R. at 61, 557.) However, he was laid off on August 15, 2001, when the firm closed the satellite office in which he worked. (R. at 40-41, 61-62, 557-58.) Subsequent to his layoff, Newman applied for and collected unemployment benefits, and he actively looked for other work, without success, until August 15, 2002, the date he alleges he became disabled. (R. at 41-45, 61-63.)

At issue in this case is Newman's mental residual functional capacity. Thus, the court will consider only the medical evidence for this time period relating to Newman's mental residual functional capacity. In rendering her decision, the ALJ reviewed records from Lauree A. Ramsden, L.C.S.W., a licensed clinical social worker; Dr. Uzma Ehtesham, M.D.; Dr. Sudama S. Tholpady, M.D.; Jennifer Ely, L.C.S.W., a licensed clinical social worker; and Robert S. Spangler, Ed.D., a licensed psychologist.

On September 15, 1999, Newman saw Lauree A. Ramsden, L.C.S.W., a licensed clinical social worker, for psychological counseling.[4] (R. at 522.) In December 1999, Newman reported that his family physician, Dr. Sudama S. Tholpady, M.D., had placed him on Prozac, and that it was "helping." (R. at 523, 526.) In January 2000, Newman reported that he had started his college classes; was never without a book; was a workaholic; loved a challenge; and had joined the church choir. (R. at 528-29.) In February 2000, Newman reported that he went out with his wife on weekends; was having a good time in his classes; and always experienced "some degree of depression," which was made better by "busyness." (R. at 530-32.) In May 2000, Ramsden noted that Newman had started two computer classes and was attempting to learn Latin and to play the piano. (R. at 541-42.) In October 2000, Newman reported that he could tell "a positive difference" since resuming Prozac. (R. at 550.) In November 2000, Newman stated that he had applied for a tutoring position. (R. at 550.) In December 2000, Newman reported that the year 2000 had been a "good year," and that his then-current stress level was low to moderate. (R. at 551-52.) Ramsden's treatment notes from September 1999 through May 2001 contain essentially no objective mental status examination findings. (R. at 522-58.)

On September 24, 2001, Newman reported increased alcohol consumption since his layoff. (R. at 558.) In December 2001, Newman reported that he had "fewer days of not drinking than of drinking." (R. at 561.) He reported that his depression had increased and his motivation had decreased, but stated that he was writing essays and working on a journal. (R. at 561.) In February and March 2002, he reported that he

---

[4] Newman attended counseling sessions with Ramsden from November 1996, when he was first accused of sexual abuse, until June 1997, when he entered prison. (R. at 54, 505-21.) During those sessions, he generally reported feelings of depression and anxiety, and Ramsden diagnosed an adjustment disorder with mixed depression and anxiety. (R. at 505-21.) Newman resumed his counseling sessions with Ramsden on September 15, 1999, after his release from prison and continued with them through August 2002. (R. at 54-55, 522-64.)

was discouraged about not having a job; planned to begin walking with his wife; was drinking, but not excessively; and was engaging in writing exercises. (R. at 562.) During Newman's final counseling session on August 26, 2002,[5] Jennifer Ely, L.C.S.W., a licensed clinical social worker, noted that Newman and his brother had been criminally charged with assault after they got into an altercation with each other over the care of their elderly father.[6] (R. at 35-38, 564.) Ely's treatment notes from September 2001 through August 2002 do not include any results from mental status examinations. (R. at 558-64.)

From September 2002 through January 2004, Dr. Tholpady treated Newman for a variety of medical issues, including rashes, congestion, chest pain, an earache and insect stings. (R. at 272-76.) Dr. Tholpady diagnosed depression on three of the visits and prescribed Prozac. (R. at 273-74, 276.) While Dr. Tholpady reported that Newman was alert and oriented during the September 19, 2002, examination, the remainder of his progress notes during this time period are devoid of any objective findings concerning Newman's mental status. (R. at 270-76.)

On November 6, 2002, Newman saw Dr. Uzma Ehtesham, M.D., for complaints of having flashbacks from his past and increased anger. (R. at 337.) Newman also stated that he had experienced a "bad couple of mild episodes of depression." (R. at 337.) Dr. Ehtesham reported through June 2007 that Newman's depression and anxiety were stable and under control. (R. at 240, 243, 246, 252, 256, 264.)

---

[5] Newman testified that he stopped seeing Ramsden for therapy because he believed his condition had improved and he was "healed." (R. at 54-55.)

[6] These charges were later dismissed. (R. at 35-38, 564.)

On February 19, 2009, Roberts S. Spangler, Ed.D., a licensed psychologist, performed a psychological evaluation at the request of Newman's attorney. (R. at 421-25.) Spangler reported that Newman was oriented, alert, cooperative, maintained good eye contact and had adequate social skills. (R. at 423.) Spangler completed a mental assessment indicating that, due to bipolar disorder and an anxiety disorder, Newman would likely miss more than two days of work per month and that he had no useful ability to deal with the public, to relate to co-workers, to deal with work stress, to relate predictably in social situations, to understand, remember and carry out detailed and complex instructions and to demonstrate reliability. (R. at 426-28.) Spangler did not state that his opinion was anything other than a current assessment of Newman's capabilities. (R. at 426-28.) On July 10, 2009, Spangler stated that, based on his evaluation and review of the medical documentation, it was his opinion, that Newman met or equaled medical listing § 12.04A(3) on or prior to December 31, 2003. (R. at 503.)

## III. Analysis

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2010); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2010).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A) (West 2003 & Supp. 2010); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Newman argues that the ALJ erred by failing to give full consideration to the findings of Spangler in determining his residual functional capacity. (Plaintiff's Memorandum In Support Of His Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-8.) Newman also argues that the ALJ erred by failing to find that his impairments met the listing for depression found at 20 C.F.R. Part 404, Subpart P,

Appendix 1, § 12.04.[7] (Plaintiff's Brief at 8-10.) Newman does not contest the ALJ's finding with regard to his physical residual functional capacity.

As stated above, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 416.927(d), if she sufficiently explains her rationale and if the record supports her findings.

Newman argues that the ALJ erred by failing to find that his condition met the listing for § 12.04. (Plaintiff's Brief at 8-10.) Based on my review of the record, I reject this argument. The qualifying criteria for the listed impairment for depression is found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04. In this case, the ALJ found that Newman met the "A" criteria for § 12.04, but that he did not meet the "B" criteria. (R. at 10-13.) To meet the requirements of subsection B, a claimant must show that he suffers from at least four of the listed symptoms of depressive syndrome, which result in at least two of the following:

---

[7] Listing § 12.04 is the listing for affective disorders characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(A)(1), 12.04(B) (2010). A claimant also may meet the requirements of this section if he has a medically documented history of a chronic affective disorder of at least two years' duration that has caused more than minimal limitation of ability to do basic work activities. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C) (2010).

In this case, there is no evidence to support a determination that Newman experienced repeated episodes of decompensation, each of extended duration, due to his mental impairments during the relevant time period. There also is no evidence that Newman's mental impairments resulted in a "marked" limitation in any of these categories during the relevant time period. Newman resumed counseling with Ramsden in 1999 after being released from prison. (R. at 522, 525.) He continued counseling until August 2002. (R. at 527-64.) During this time, neither Ramsden nor Ely opined that Newman was unable to work, and their treatment records from September 1999 to August 2002 are basically devoid of any objective psychological findings. (R. at 527-64.) The record reflects that Newman began taking classes in a paralegal program in January 2000 and continued those classes until he graduated in May 2001. (R. at 528-56.) During this time, Newman completed an internship; was hired as a tutor; stated he was trying to learn Latin and to play the piano; went out with his wife on weekends; wrote essays; kept a journal; helped a senior citizen with odd jobs and mowing; and cared for his dog. (R. at 541-42, 548-51, 561.)

From May 2001 to August 2001, Newman worked in a clerical/administrative position at a law firm. (R. at 39-40.) He said that he loved the job and never missed a day of work, but he was laid off when the satellite office in which he was employed closed. (R. at 39-41, 61-62.) He then collected unemployment benefits, indicative that he was able and available to work during the time he collected benefits, and he actively sought other work without any success for about one year. (R. at 41-45, 61-63.)

Evidence from the relevant time period shows that Newman saw Ely one final time on August 26, 2002, because he believed his psychological condition had improved and he was "healed." (R. at 54-55, 564.) In fact, Dr. Ehtesham's treatment notes through June 2007 show that Newman's depression and anxiety were stable and under control. (R. at 240, 243, 246, 252, 256, 264.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986).

Based on the above, I find that substantial evidence exists to support the ALJ's finding that Newman's condition did not meet or equal the listing for § 12.04. I also find that substantial evidence exists to support the ALJ's rejection of Spangler's 2009 assessment. The ALJ rejected Spangler's opinions because they were based primarily on Newman's self-reported symptoms during a one-time examination that took place well over five years following his date last insured, and they were inconsistent with the other evidence of record. (R. at 15-16.) Based on my review of the evidence, I agree.

For all of the reasons stated above, I find that substantial evidence supports the ALJ's finding with regard to Newman's mental impairment, and I recommend that the court deny Newman's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the ALJ's finding that Newman's condition did not meet or equal the listing for § 12.04 between August 15, 2002, and December 31, 2003; and

2. Substantial evidence exists to support the ALJ's finding that Newman was not disabled under the Act between August 15, 2002, and December 31, 2003.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Newman's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2010):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:   March 25, 2011.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE